132

Argued and submitted July 19, 2012, affirmed April 10, 2013

Stephen GREER,
Personal Representative of
the Estate of Russell Greer, Deceased,
*Plaintiff-Appellant*,

*v.*

ACE HARDWARE CORPORATION,
an Illinois corporation, et al,
and Union Carbide Corporation,
*Defendants*,

*and*

GEORGIA-PACIFIC CORPORATION,
a Georgia corporation;
Backstrom Builders Center,
an Oregon corporation,
as successor-in-interest to
Backstrom Builders Center, Inc.;
and The Miller Lumber Co.,
an Oregon corporation,
*Defendants-Respondents*.

Multnomah County Circuit Court
080608888; A143981 (Control), A145112

300 P3d 202

Robert K. Udziela argued the cause for appellant. With him on the opening brief was Jeffrey S. Mutnick. On the reply brief was Robert K. Udziela.

Andrew D. Glascock argued the cause for respondent Georgia-Pacific Corporation. With him on the brief was Jennifer A. Durham.

J. Michael Mattingly argued the cause for respondent Backstrom Builders Center. With him on the brief was Rizzo Mattingly Bosworth PC.

Matthew J. Kalmanson argued the cause for respondent The Miller Lumber Co. With him on the brief was Hoffman Hart & Wagner LLP.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

**HADLOCK, J.**

Plaintiff appeals a judgment for defendants, challenging the trial court's grant of summary judgment in defendants' favor on claims arising from decedent Russell Greer's alleged exposure to asbestos on home-construction sites during the 1960s and 1970s.[1] In his first amended complaint, decedent brought negligence and strict-products-liability claims against numerous defendants alleged to be suppliers or manufacturers of asbestos-containing materials, including suppliers Backstrom Builders Center (Backstrom), The Miller Lumber Company (Miller), and manufacturer Georgia-Pacific Corporation (Georgia-Pacific), the only defendants that are parties to this appeal. The trial court granted those three defendants' motions for summary judgment, concluding that there was no genuine issue of material fact as to whether decedent had been exposed to any asbestos-containing product manufactured by Georgia-Pacific or sold by Backstrom or Miller. Because plaintiff has not demonstrated that the summary judgment record included evidence from which a jury could find in his favor, we affirm as to all three defendants.

Summary judgment is proper where "the pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact." ORCP 47 C. There is no genuine issue of material fact if, "based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party." *Id.* In accordance with that standard, we describe the evidence in the light most favorable to plaintiff, the nonmoving party, and draw all inferences in his favor. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

Decedent initiated this litigation in 2008 when he was in his mid-80s and allegedly suffering from mesothelioma caused by exposure to airborne asbestos fibers. The first amended complaint named 19 defendants, each an

---

[1] Russell Greer initiated this action but has since died. We refer to him as "decedent" in this opinion. After decedent's death, his son, Stephen Greer, was appointed personal representative and was substituted as plaintiff in this litigation.

alleged manufacturer, designer, processor, marketer, seller, or distributor of asbestos fibers or asbestos-containing products. A chart attached as Exhibit A to that complaint traced decedent's career from 1946, when he worked with the United States Army in Japan, through 1978, when he worked as a self-employed contractor in Bend, Oregon. Each row in Exhibit A represented a location where decedent had worked for a number of years, and each row also included information about the work activities in which decedent had engaged at that location, as well as a list titled "Asbestos Containing Products" and a list of the defendants allegedly associated with those products.

As pertinent to this appeal, Exhibit A encompassed an allegation that decedent had used Georgia-Pacific "[t]ape, mud, [and] joint compounds" during his work as a home-construction contractor in Kalispell, Montana, during the 1960s. Exhibit A also included allegations against distributors Miller and Backstrom related to decedent's work building homes in Bend, Oregon, from 1969 to 1978. The exhibit did not specify what asbestos-containing products decedent allegedly had purchased from those defendants. Rather, it listed various insulation, roofing, flooring, "[a]dhesives, tape, mud, [and] joint compounds" manufactured by other defendants that decedent allegedly had used in his contracting work, and it suggested that decedent had obtained those products through several distributors, including Backstrom and Miller.

After the parties engaged in discovery, including the deposition of decedent, defendants moved for summary judgment. Georgia-Pacific has acknowledged that it manufactured joint compound that contained asbestos. Nonetheless, it asserted that it was entitled to summary judgment because decedent could not "set forth any specific evidence that he worked with or around any asbestos-containing product manufactured by Georgia-Pacific." To the contrary, Georgia-Pacific asserted, that decedent had been unable, at his deposition, "to recall the specific brand names or manufacturers of joint compound products he used in * * * Montana." According to Georgia-Pacific, decedent could "establish only a general recollection of the name Georgia-Pacific" and,

at most, "relate[d] Georgia-Pacific to sheetrock, not joint compound."

In their summary judgment motions, Miller and Backstrom argued that decedent had not offered any evidence that he had purchased asbestos-containing products from their stores. Miller asserted that decedent had not been able to identify "any asbestos products purchased from Miller Lumber" during his deposition. Miller quoted excerpts from decedent's deposition suggesting that he could not recall having purchased roofing, sheetrock, vinyl flooring, joint compound, or finishing compound from Miller. Also citing decedent's deposition testimony, Backstrom asserted that decedent remembered buying roofing products, joint compound, and finishing compound from Backstrom, but could not recall the brand names of any of those products. Backstrom concluded that it was entitled to summary judgment because decedent could recall only the types of products he had purchased from Backstrom, not the brand names of those products, and because decedent could not establish that the products he purchased must have contained asbestos.

In response to defendants' summary judgment motions, decedent offered the sworn testimony of several witnesses regarding the types of products that Miller and Backstrom had sold during the relevant time period, as well as evidence about the types of products that had been purchased from those suppliers for use at decedent's construction sites. In addition, decedent submitted declarations stating generally that he knew he had used asbestos-containing versions of defendants' products. Specifically, if somewhat cryptically, the declarations that decedent submitted in opposition to Backstrom's and Miller's summary judgment motions (the "Backstrom declaration" and the "Miller declaration") each asserted:

"Having reviewed * * * materials, not only in this declaration, but in my declarations in response to Kaiser Gypsum, Certainteed, and Georgia Pacific, as well as some of the deposition materials from the Miller and Backstrom depositions, *I know that some of the asbestos-containing products*

*which were acquired from Miller and Backstrom for use in these homes contained asbestos."*

(Emphasis added.)

Similarly, decedent submitted a declaration in opposition to Georgia-Pacific's motion for summary judgment (the "Georgia-Pacific declaration") in which he asserted:

"[I]t is clear to me that some of the materials which were distributed by [Georgia-Pacific] with which I worked or utilized in my workplace in Kalispell on my home-building projects were materials which contained asbestos. While working on the Kalispell homes, I performed traditional sheetrock activities and used the products customarily used for the completion of drywall projects. These products included tape, finishing mud, topping materials, joint compounds and other traditional 'drywall' or 'sheetrock' materials.

"When I was first asked by my counsel to make a list of products to which I recall having been exposed, without benefit of anything other than my memory, I recalled having used Georgia-Pacific products in my drywall activities while in Kalispell. Now, having had the opportunity to refresh my recollection and view photographs of products, as well as product descriptions, *at least some of the Georgia Pacific products I used were asbestos-containing products."*

(Emphasis added.) Defendants suggested that the trial court should strike or disregard all three of those declarations on the ground that they were inconsistent with decedent's earlier deposition testimony.

The trial court granted defendants' motions for summary judgment on the basis that decedent had failed to put forth evidence demonstrating genuine issues of material fact as to whether he had been exposed to asbestos-containing versions of products manufactured by Georgia-Pacific or distributed by Miller or Backstrom. In its order granting Backstrom's motion for summary judgment, the court indicated that it had considered the Backstrom declaration in arriving at its decision. In contrast, relying on *Henderson-Rubio v. May Dept. Stores*, 53 Or App 575, 585, 632 P2d 1289 (1981), in which we held that an affidavit that was "clearly

inconsistent" with earlier deposition testimony did not create a genuine issue of fact absent an explanation of the inconsistency, the trial court excluded the Georgia-Pacific declaration. Plaintiff and Miller agree that the trial court also excluded the Miller declaration.[2]

On appeal, plaintiff contends that the trial court erred in granting defendants' summary judgment motions. Plaintiff first challenges the trial court's ruling that it would not consider the declarations described above.[3] Second, plaintiff contends that the record included evidence sufficient to create a genuine dispute regarding the defendants' liability and, therefore, that none of the defendants was entitled to summary judgment. Defendants largely reiterate the arguments they made below, focusing on what they contend is a lack of evidence that decedent used or worked around any specific asbestos-containing product either manufactured by Georgia-Pacific or supplied by Miller or Backstrom. We do not reach the question of whether the trial court erred in excluding the Miller and Georgia-Pacific declarations from the summary judgment record, because we conclude, for the reasons set out below, that defendants would have been entitled to summary judgment even if the trial court had considered those declarations.

We begin our analysis by reviewing other asbestos-liability cases in which we have addressed the type of evidence sufficient to create a genuine dispute of material fact regarding a plaintiff's exposure to an asbestos-containing product manufactured or supplied by a particular defendant. In *Abendroth v. Asbestos Corporation, Ltd*, 201 Or App 705, 709, 120 P3d 535 (2005), the trial court granted summary judgment in favor of the defendant. We reversed, concluding that there was a genuine issue of fact as to whether the plaintiff had been exposed to the defendant's asbestos-containing product. In that case, a retired drywaller who claimed to

[2] Although the relevant language in the Backstrom and Miller declarations, which we quoted above, was identical, the record does not provide information as to why the trial court excluded the Miller declaration, but not the Backstrom declaration.

[3] Plaintiff asserts that the trial court excluded all three of the declarations. As noted, however, we have determined that the trial court did not actually exclude the Backstrom declaration.

have suffered from an asbestos-related disease sued a company that manufactured drywall materials. The facts, stated in the light most favorable to the plaintiff, showed that, for 15 years, *all* of the defendant's taping compounds contained asbestos, and that, during that period, on at least one job, the plaintiff used a taping compound manufactured by the defendant. *Id.* at 709-12. Those facts reasonably permitted the inference that the plaintiff had been exposed to an asbestos-containing taping compound manufactured by the defendant.

In *West v. Allied Signal, Inc.*, 200 Or App 182, 113 P3d 983 (2005), the plaintiff alleged that the decedent, who had worked in a foundry, had been exposed to asbestos gloves provided by the defendant, an industrial supply company. The trial court granted summary judgment for the defendant on the ground that the plaintiff had not shown that the defendant provided the asbestos gloves worn by the decedent. As in *Abendroth*, we reversed. Viewed in the light most favorable to the plaintiff, the record showed that (1) the foundry provided asbestos gloves to the decedent, (2) the defendant sold industrial products, including asbestos gloves, and (3) the foundry purchased a substantial amount of industrial products from the defendant. Further, the record revealed no other supplier of industrial products to the foundry. *Id.* at 192. We concluded that a juror could infer from that evidence that the "defendant was the probable source of the asbestos gloves that decedent and his coworkers wore," as the record did not include evidence suggesting that the asbestos gloves could have come from any other source. *Id.*

In *Perman v. C. H. Murphy / Clark-Ullman, Inc.*, 220 Or App 132, 185 P3d 519 (2008), the plaintiff asserted that the decedent, a welder and sheet metal mechanic, had been exposed to asbestos-containing gloves provided by the defendant, a welding supply company. The trial court granted summary judgment in the defendant's favor, concluding that the plaintiff had failed to present evidence sufficient to create an issue of material fact, and we reversed. Stated in the light most favorable to the plaintiff, the testimony in that case established that (1) the defendant supplied silver

gloves to the decedent's employer, (2) the decedent used silver gloves that the defendant had supplied, and (3) the decedent, who was familiar with asbestos-containing products, believed that the silver gloves he used had contained asbestos. *Id.* at 136-37, 141. That evidence, we held, would allow a juror to infer that the defendant was the source of asbestos-containing silver gloves to which decedent had been exposed.

In each of those cases—*Abendroth, West,* and *Perman*—the summary judgment record created a genuine issue of material fact because it included evidence from which a juror reasonably could infer that the plaintiff or decedent had been exposed to a particular asbestos-containing product sold or manufactured by the defendant. Our holdings in those cases, therefore, are consistent with the general principle that, once a defendant in an asbestos-liability case moves for summary judgment on the ground that the plaintiff cannot establish that he or she was exposed to "specific asbestos products" for which the defendant is responsible, the plaintiff has "the burden of producing product identification evidence" in opposition to the summary judgment motion. *Weihl v. Asbestos Corporation, Ltd,* 204 Or App 255, 265, 129 P3d 748, *rev den,* 342 Or 254 (2006).[4] At the very least, a plaintiff must be able to identify a specific *type* of product—*e.g.*, taping compounds, as in *Abendroth,* or gloves, as in *West* and *Perman*—that the defendant manufactured or supplied and to which the plaintiff was exposed. Without such particular identification of a defendant's asbestos-containing product, a juror has no basis for inferring that the defendant is liable for having manufactured or supplied a product that caused the plaintiff harm.

---

[4] The issue before this court in *Weihl* was the propriety of a general order that (1) required plaintiffs in asbestos cases to provide defendants with a written "product identification report" identifying "the product to which the plaintiff was exposed," 204 Or App at 261, and (2) stated that a plaintiff who failed to comply with that requirement would not be permitted "to offer product identification evidence as to a particular product and a particular defendant" in response to a summary judgment motion, *id.* at 268. No such general order is at issue in this case. However, in the course of affirming the trial court's decision in *Weihl,* we articulated the generally applicable principle that plaintiffs in asbestos-liability cases must identify the specific products to which they allege they were exposed, and it is for that broad proposition that we cite *Weihl* here.

Here, the Backstrom and Miller declarations did not meet that standard because they did not identify any *specific* asbestos-containing product that plaintiff alleged was obtained from Backstrom or Miller for use on one of decedent's Bend home-construction sites. Nor did the Georgia-Pacific declaration satisfy the "specific asbestos product" requirement; it, too, failed to identify any particular asbestos-containing Georgia-Pacific product used in decedent's contracting work in Montana. Rather, the declarations merely asserted that "some" of the Georgia-Pacific products that decedent used, and "some" of the products he purchased from Backstrom and Miller, contained asbestos. Those averments amount to little more than paraphrasing of the ultimate facts that decedent had alleged in his first amended complaint. Such conclusory restatements of ultimate facts are not "specific facts showing that there is a genuine issue * * * for trial." ORCP 47 D. *Cf. Allen v. Kaiser Foundation Hospital*, 76 Or App 5, 9, 707 P2d 1289 (1985) ("Plaintiff was required, in order to avoid summary judgment, to show that there were genuine issues of fact. Her expert's conclusory statement that there was negligence in the particulars stated in the complaint does no more than rest on the allegations of the complaint.").

Nor has plaintiff established that other evidence in the record created a genuine dispute of material fact regarding decedent's exposure to any asbestos-containing product manufactured or sold by defendants. With respect to Backstrom, plaintiff points to the following additional evidence:

- witnesses' testimony that the bulk of the products used in decedent's construction of homes in Bend came from Backstrom and Miller, including sheetrocking and roofing materials;

- evidence that Backstrom sold Redy Coat and Black Jack roofing tar, both of which plaintiff asserts contain asbestos;

- evidence that Backstrom sold roofing tiles of a sort that decedent used; and

- evidence that Backstrom sold Georgia-Pacific joint compound, which Georgia-Pacific has acknowledged contained asbestos.

Plaintiff contends that a juror could conclude from that evidence "that Backstrom sold asbestos-containing products for use by Russell Greer, that Russell Greer used them, and that the products contributed to his disease."

The difficulty with plaintiff's argument is that, at most, it establishes that a reasonable juror could have found two broad facts: (1) that decedent purchased some roofing and sheetrocking materials from Backstrom, and (2) that Backstrom sold some roofing and sheetrocking materials that contained asbestos. But plaintiff has not pointed to any evidence showing an overlap between those two sets of building materials, *i.e.*, that the materials that decedent purchased from Backstrom included some of the asbestos-containing materials that Backstrom sold. Nor has plaintiff identified any evidence from which a juror could infer that *all* of the roofing or sheetrocking materials that Backstrom sold contained asbestos, meaning that the materials that decedent purchased necessarily must have contained asbestos. Consequently, only guesswork could lead a juror to conclude that decedent actually purchased asbestos-containing materials from Backstrom that were used on his job sites in Bend. That kind of speculation would not be sufficient to support a verdict in plaintiff's favor, and the trial court ruled correctly that it was not sufficient to defeat Backstrom's summary judgment motion.

For similar reasons, plaintiff has not established that the trial court erred when it granted summary judgment to Miller. In addition to the Miller declaration (discussed above), plaintiff points to evidence that decedent bought certain construction materials, including roofing and sheetrocking materials, from Miller, and to evidence that Miller stocked asbestos-containing roofing and sheetrocking materials during the same period in the 1960s and 1970s. Again, however, plaintiff has pointed to no evidence from which a juror could infer—rather than guess—that the products that decedent bought from Miller were those products that contained asbestos.

The evidence regarding decedent's use of materials manufactured by Georgia-Pacific also was insufficient to overcome that defendant's summary judgment motion. Plaintiff acknowledges that, during decedent's deposition, he talked about the sheetrock work he did in Montana and was able to identify only "3M" as one brand of joint compound he used in that work. Nonetheless, plaintiff argues, decedent's deposition testimony was sufficient, along with his declaration and Georgia-Pacific's admission that its joint compound contained asbestos, to create a genuine issue of material fact:

> "When [decedent] was questioned at his deposition, he referenced his product identification list [Exhibit A to the first amended complaint], with each of the manufacturers he recalled. Georgia-Pacific was one of the manufacturers he identified using in Kalispell. That testimony, plus Greer's declaration and Georgia-Pacific's admission that its joint cement contained asbestos, sufficiently creates a material issue of fact."

(Citations omitted.) The referenced deposition testimony cannot bear the weight that plaintiff places on it. Decedent did *not*, in his deposition, testify that he recalled having used Georgia-Pacific joint compound when he did sheetrock work in Montana. Rather, when asked what products he associated with Georgia-Pacific, decedent identified only sheetrock panels, not the joint compound that is used to smooth the connections between those panels. And this record includes no evidence that Georgia-Pacific sheetrock panels themselves contained asbestos. Accordingly, there is no evidence in the record from which a juror rationally could infer that decedent used a particular Georgia-Pacific product that contained asbestos.

In sum, plaintiff has not established that the record included evidence that could support an inference that decedent used any specific asbestos-containing product manufactured by Georgia-Pacific or supplied by Miller or Backstrom. The trial court ruled correctly in granting those defendants' motions for summary judgment.

Affirmed.